# No. 24-149

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

---

**National Labor Relations Board,**
Applicant—Appellee,
v.
**Universal Smart Contracts, LLC, Party Shuttle Tours, LLC,
City Info Experts, LLC, and Charles Thomas Schmidt**
Respondents—Appellants.

---

### On Appeal from
The U.S. District Court for the Southern District of New York, No. 1:23-mc-00051-VEC

---

## BRIEF OF APPELLANTS

---

May 10, 2024          Respectfully submitted,

SCHMIDT LAW FIRM, PLLC

By:____/s/ C. Thomas Schmidt_____
C. Thomas Schmidt
Texas Bar No. 00797386
Email: firm@schmidtfirm.com
7880 San Felipe, Suite 210
Houston, Texas 77063
Tel: 713-568-4898  Fax: 815-301-9000

**ATTORNEYS FOR RESPONDENTS-APPELLANTS**

1

## CORPORATE DISCLOSURE STATEMENT

Appellants certify that there are no corporations that are parties to this proceeding, and that none of the parties have a parent corporation or an owner of more than 10% that is a publicly held corporation.

<u>/s/ Charles Thomas Schmidt</u>

Attorney for Appellants

## STATEMENT REGARDING ORAL ARGUMENT

Appellants request oral argument in this proceeding because there are numerous fact-intensive issues and multiple legal issues that affect other parties and pending and future matters. Appellants believe that three rounds of briefing are insufficient to cover the myriad important issues fully and seek the opportunity to discuss and answer the panel's questions about the issues presented.

## STATEMENT OF THE CASE

The NLRB brought an action against New York Party Shuttle, LLC, asserting that it engaged in unfair labor practices towards Fred Pflantzer, a tour guide. The NLRB entered an award of damages against NYPS and found that a number of entities comprised a single employer and were thus liable. The NLRB issued a subpoena to each of the Appellants that was returnable in Washington DC. When Appellants objected to the subpoenas, the NLRB brought an enforcement action in the Southern District of New York.

Appellants filed Motions to Dismiss, objecting to the jurisdiction of the Southern District on the basis of lack of personal jurisdiction, lack of subject matter jurisdiction, and lack of venue, and reserved the right to assert substantive objections to the subpoenas.

Judge Valerie Caproni denied the Motion to Dismiss and, in the same Order, ordered Appellants to comply with the subpoenas and to pay the NLRB's attorneys' fees – without giving Appellants the opportunity to refute the propriety of the subpoenas on substantive bases.

Appellants ask that this Court reverse the District Court's decision and order that the case be dismissed and reverse the order regarding attorneys' fees, or, in the alternative, that the Court reverse the portion of the Order that enforces the subpoenas and remand the case for a determination on the merits, giving Appellants

4

an opportunity to assert substantive objections.  In the latter event, Appellants ask that the attorneys' fees award be reversed.

**The Result Below**

The District Court denied the Motion to Dismiss, ordered compliance with the subpoenas without Response or hearing, and awarded approximately $38,123.00.[1]

---

[1]    *See* Appendix at Tabs 2 & 3.

# Contents

CORPORATE DISCLOSURE STATEMENT ................................................................ 2

STATEMENT REGARDING ORAL ARGUMENT .................................................... 3

STATEMENT OF THE CASE ..................................................................................... 4

JURISDICTIONAL STATEMENT ........................................................................... 11

STATEMENT OF THE ISSUES PRESENTED ....................................................... 12

I.        SUMMARY OF THE ARGUMENT ............................................................. 13

II.       BACKGROUND ............................................................................................ 14

          A. Factual background ............................................................................... 15
          B. Procedural background ......................................................................... 18

III.      ARGUMENTS AND AUTHORITIES ......................................................... 19

Issue 1: Did the Southern District of New York have personal jurisdiction over four parties with zero contacts or involvement with the state of New York? ........................................................ 19

          The District Court does not have personal jurisdiction over Appellants. ................. 19
          1.        Legal framework for personal-jurisdiction analysis ........................................ 19
          2.        Appellants do not have sufficient minimum contacts with the State of New York for the District Court to exercise personal jurisdiction over them ......... 21

Issue 2: Is it unfair and unreasonable for the Southern District of New York to exercise jurisdiction over these parties in this matter? ............................................................................ 26

          3.        Even if Appellants did have sufficient minimum contacts with the State of New York—which they do not—it would be unfair and unreasonable for the District Court to exercise personal jurisdiction over them. ............................. 27

Issue 3: Can service of a party by certified mail sent to another state confer personal jurisdiction on that party? ............................................................................................................... 29

Issue 4: Did the District Court err by not dismissing the case for lack of proper venue? ............. 31

    In the alternative, the case should have been dismissed or transferred to Judge Hughes' Court in the Southern District of Texas pursuant to Rule 12(b)(3). . 31

Issue 5: Did the District Court err by refusing to dismiss the case for lack of subject matter jurisdiction because the case involves subpoenas issued in and returnable in Washington, DC, and respondents who reside in Texas? ........................................................................... 36

    In the alternative, this proceeding should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) ............................................................. 36

Issue 6: Did the District Court err by awarding attorneys' fees to the NLRB jointly and severally against all Appellants? ....................................................................................................... 37

    An Award of Fees Was an Unreasonable Sanction .................................................... 38

    The NLRB Failed to Segregate Their Fees .............................................................. 38

IV.    CONCLUSION ............................................................................................................... 39

CERTIFICATE OF SERVICE ........................................................................................... 41

CERTIFICATE OF COMPLIANCE ................................................................................... 42

# Table of Authorities

Cases

*ACLU of Georgia v. Barnes*, 168 F.3d 423, 429 (11th Cir. 1999)................................ 39

*Alaska Dep't of Revenue v. Manku*, 20-1759-cv, at *8 (2d Cir. July 19, 2021) .......................... 31

*American Home A. C. v. United Space Alliance*, 378 F.3d 482, 494 (5th Cir. 2004).................. 38

*Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 113 (1987). ................................ 27

*Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas,* 571 U.S. 49, 134 (2013). .............................................. 33

*In re Bailey Associates, Inc.*, 224 B.R. 734, 737 (Bankr. E.D. Mo. 1998).................................. 31

*Best Van Lines, Inc. v. Walker,*490 F.3d 239, 242 (2d Cir.2007) ................................ 19

*Boehner v. Heise,* 410 F.Supp.2d 228, 241 (S.D.N.Y. 2006) ...................................... 33

*Brown v. Lockheed Martin Corp.,* 814 F.3d 619, 629 (2d Cir. 2016) .......................... 23

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) .............................................. 21, 25, 26

*Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 384 (5th Cir. 2003). .................. 27

*Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014).................................................... 22

*Durham Productions v. Sterling Film Portfolio*, 537 F. Supp. 1241, 1243 (S.D.N.Y. 1982) ...... 35

*Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.,* 260 F.Supp.3d 401, 407 (S.D.N.Y. 2017) ............................................................... 33

*Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.,* 928 F.Supp.2d 735, 743 (S.D.N.Y. 2013) ............................................... 33

*Gardner v. New York City*, 20-CV-2333 (CM), at *2 (S.D.N.Y. July 23, 2020) ........................ 34

*George Moundreas & Co SA v. Jinhai Intelligent Mfg. Co Ltd,* No. 20 Civ. 2626 (VEC), 2021

WL 168930, at *1 n.1 (S.D.N.Y. Jan. 18, 2021) ....................................................... 22

*Goodyear Dunlop Tires Operations S.A. v. Brown,* 564 U.S. 915, 131 S.Ct. 2846, 2851, 180

L.Ed.2d 796 (2011) ................................................................................... 20, 22, 25

*Gucci Am., Inc. v. Weixing Li,* 768 F.3d 122, 135 (2d Cir. 2013) ................................ 23

*Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005) .................................. 31

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16 (1984). .................. 22

*Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) .................. 20

*Iragorri v. United Tech. Corp*., 274 F.3d 65, 72 (2d Cir. 2001) .................................... 34

*J.G. by Mrs. G. v. Bd. of Educ. of Rochester City Sch. Dist.*, 830 F.2d 444, 447-48

(2d Cir. 1987) ................................................................................................ 38

*Johnston v. Borders*, 36 F.4th 1254, 1282 (11th Cir. 2022) ..................................... 38, 39

*Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043

(2d Cir. 1990) ................................................................................................ 22

*Liberty Mut. Ins. Co. v. Expeditors Int'l Ocean*, 2:22-cv-00007, at *1

(W.D. Wash. Jan. 11, 2023) ............................................................................. 35

*Licci v. Lebanese Canadian Bank SAL*, 732 F.3d 161, 168 (2d Cir. 2013) .................................. 19

*Metro. Life Ins. Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 568 (2d Cir.1996). ....................... 21

*N.L.R.B. v. Cooper Tire Robber Co.*, 438 F.3d 1198, 1199 (D.C. Cir. 2006) ............................. 37

*N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.,* 599 F.3d 102, 114 (2d Cir 2010). ............ 33

*National Super Spuds, Inc. v. New York Mercantile Exchange,* 425 F. Supp. 665, 667

(S.D.N.Y. 1977) ............................................................................................. 35

*Phillips v. Smalley Maintenance Services*, 711 F.2d 1524, 1530 (11th Cir. 1983) ..................... 38

*Schmidt v. NLRB*, Cause No. 4:22-mc-01426, (S.D. Tex. 2022). .................................. 18

*Schoolcraft v. City of N.Y.*, 10 Civ. 6005 (RWS), at *31 (S.D.N.Y. Sep. 1, 2016) ...................... 38

*Shi v. Don Le*, 21 CV 1361 (ARR) (CLP), at *8 (E.D.N.Y. Mar. 2, 2022) ................................. 30

*Starr Indem. & Liab. Co. v. Brightstar Corp.,* 324 F.Supp.3d 421, 431 (S.D.N.Y. 2018). .......... 34

*United Space Alliance*, 378 F.3d at 494 (5th Cir. 2004) ................................................................ 39

*Warfield v. KR Entertainment* (*In re Federal Fountain, Inc*.), 143 F.3d 1138, 1139 (8th Cir.

    1998) ....................................................................................................................................... 31

*Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000) ........................................ 22

*Woldanski v. TuSimple Holdings, Inc.*, 22 Civ. 9625 (AKH), at *2-3 (S.D.N.Y. Feb. 7, 2023) .. 33

**STATUTES:**

29 U.S.C. §1291 ...............................................................................................................................1

28 U.S.C. §1391 .............................................................................................................................22

## JURISDICTIONAL STATEMENT

The District Court below did NOT have personal or subject matter jurisdiction over this proceeding, as detailed in Appellants' Motion to Dismiss, filed below, and the arguments contained in this Appellate Brief.

The Second Circuit Court of Appeals has jurisdiction over this appeal pursuant to 29 U.S.C. §1291 because the judgment below is a final judgment of the United States District Court within this Circuit.

The Notice of Appeal in this case was filed on January 12, 2024, within sixty (60) days of the entry of the Judgment on November 16, 2023. FED. R. APP. P. 4(a)(1)(B).

This is an appeal of a Final Judgment that disposes of all parties and all claims in the case below.

## STATEMENT OF THE ISSUES PRESENTED

**Issue 1:**   Did the Southern District of New York have personal jurisdiction over four parties with zero contacts or involvement with the state of New York?

**Issue 2:**   Is it unfair and unreasonable for the Southern District of New York to exercise jurisdiction over these parties in this matter?

**Issue 3:**   Can service of a party by certified mail sent to another state confer personal jurisdiction on that party?

**Issue 4:**   Did the District Court err by not dismissing the case for lack of proper venue?

**Issue 5:**   Did the District Court err by refusing to dismiss the case for lack of subject matter jurisdiction because the case involves subpoenas issued in and returnable in Washington, DC, and to respondents who reside in Texas?

**Issue 6:**   Did the District Court err by awarding attorneys' fees to the NLRB jointly and severally against all Appellants?

Appellants Charles Thomas Schmidt ("Schmidt"), Party Shuttle Tours, LLC ("PST"), City Info Experts, LLC ("CIE"), and Universal Smart Contracts, LLC ("USC") file this Appellants' Brief seeking reversal of the Judgment below and dismissal of the underlying enforcement proceeding for lack of jurisdiction and venue, and in support thereof would respectfully show as follows:

## I.     SUMMARY OF THE ARGUMENT

1.     To the extent that an enforcement proceding is proper in connection with the subpoenas issued to Appellants, it should be held in the Southern District of Texas.  The Courts of New York, and specifically the United States District Court for the Southern District of New York do not have jurisdiction over any of the Appellants and venue would be improper even if it did.  Because:

- All of the Appellants reside in Texas.

- None of them have any presence in New York State.

- None of them conduct business in New York State.

- None of the documents sought in the relevant subpoenas are located in New York State.

- None of the Appellants were served with process or this suit within the state of New York.

- None of the Appellants have sufficient "minimum contacts" with the State of New York to justify this Court exercising jurisdiction over them.

- The collections investigation that the subpoenas relate to is not being conducted in New York, but rather is occurring in the District of Columbia and in Texas.

13

- The jurisdiction of the Southern District of Texas has already been invoked in connection with the collections investigation (Cause No. 4:22-mc-01426).

2.      Given the above facts, the Federal Courts in New York do not have personal jurisdiction over Appellants.  Exercising jurisdiction over them would violate their due process rights as guaranteed by the Constitution of the United States.  Appellants, therefore, moved under Rule 12(b)(2) to dismiss this proceeding in its entirety for lack of personal jurisdiction.[2]

3.      Subject to the Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, Appellants sought dismissal on the basis of 12(b)(3), because venue in New York is improper.  For the reasons above, and in the alternative to dismissing the case for lack of personal jurisdiction, Appellants asked that the District Court transfer this case to Judge Hughes' court in the Southern District of Texas.

4.      Subject to the above two Motions, Appellants moved to dismiss this case on the basis of Rule 12(b)(1), because the District Court lacks subject matter jurisdiction over this dispute. The investigation underlying the subpoenas is not taking place in New York and Appellants cannot be found in New York, so an enforcement proceding for these subpoenas may not be brought in that Court.

## II.     BACKGROUND

---

[2]      *See* Appendix, at Tabs 5 and 6.

14

## A. Factual background

5.     This proceeding arises out of an employment discrimination proceeding brought by the NLRB on behalf of Fred Pflantzer against New York Party Shuttle, LLC ("NYPS").  Neither Mr. Pflantzer nor NYPS are parties to this proceeding. A hearing was held to determine a backpay award and a decision was rendered.  The Respondents in that case appealed the decision and the Fifth Circuit Court of Appeals reversed the award, in part, and remanded it for further proceedings before the Board to determine the total backpay award.  Those further proceedings have not yet occurred, and no final award has been rendered against any party.

6.     New York Party Shuttle, LLC, which is the only entity that conducted business in New York State at any time, ceased conducting business more than 8 years ago, in 2015-2016.[3]

7.     The General Counsel has pursued post-judgment collection proceedings against certain parties that are Respondents in the backpay proceeding, despite the fact that there is no final determination of liability, and appeals have not been exhausted to the Board or a Court of Appeals on any future final award.  Their efforts in this regard are unwarranted, inappropriate, an abuse of power, and harassing to parties that are not parties to the Pflantzer Proceeding and have no connection to his employment—and no connection to New York.

---

[3]     Appendix at Tab 6, Exh. A, Declaration of Schmidt, at ¶9.

8.    Two of the Appellants here, CIE and USC, did not even exist when Pflantzer was employed by NYPS in 2012.  CIE was organized by different owners in 2015 and USC was organized many years later.[4]

9.    CIE is a Texas Corporation with its principal place of business in Houston, Texas.[5]  The only other office it ever maintained was in Atlanta, Georgia, from its founding in 2015 to approximately 2018.[6]  From 2015 to approximately April of 2020, it sold some tours on its websites that were operated by other companies in the State of New York.[7]  It never had any employees, contractors, or other personnel located or working in the State of New York.[8]  It never had any physical presence in New York.[9]  It never employed any tour guides like Mr. Pflantzer, and never operated any tours.[10]

10.    USC is a blockchain software company organized in the State of Wyoming with its principal place of business in Houston, Texas.[11]  It has no corporate connection to NYPS.[12]  Washington DC Party Shuttle, LLC ("DCPS"),

---

[4]      *Id.*
[5]      *Id.* at ¶5.
[6]      *Id.*
[7]      *Id.*
[8]      *Id.*
[9]      Appendix at Tab 6, Exh. A, Declaration of Schmidt, at ¶5.
[10]     *Id.*
[11]     *Id.* at ¶10.
[12]     *Id.*

16

and NYC Guided Tours, LLC ("NYCGT"), two Respondents in the underlying discrimination proceeding, were expected to be customers of USC and planned to use the USC software in their business to provide security to transactions with customers.[13] The terms of the hypothetical agreements would have been arms-length transactions because the various companies were unrelated and had different owners and officers.[14] The project was never implemented.[15] USC has never completed any business in New York, although it did hold one meeting in New York City at which it presented its business plan to potential investors, but no investment resulted from that meeting and no New York residents have ever been owners of USC.[16]

11. PST is a holding company that never had any employees or operations.[17] It owned the majority of the stock of NYPS at the time Pflantzer worked for NYPS.[18] PST had no direct contacts with the State of New York at any time, but had affiliates that conducted business in New York State from 2006 to 2020.[19] It has had no direct or indirect contact with the State of New York since the onset of COVID in April of 2020.[20] Even prior to that, its only contact with New

---

[13]    *Id.*
[14]    *Id.*
[15]    *Id.*
[16]    *Id.*
[17]    Appendix at Tab 6, Exh. A, Declaration of Schmidt, at ¶6.
[18]    *Id.*
[19]    *Id.*
[20]    *Id.*

York was through its affiliated company, NYCGT.

**B. Procedural background**

12.    On or about August 22, 2022, Appellants Schmidt, CIE, and USC, along with another party, Galago Partners, LLC, brought a proceeding to quash an illegal NLRB subpoena. *See Schmidt v. NLRB*, Cause No. 4:22-mc-01426, (S.D. Tex. 2022). The NLRB admitted that the subpoena was improper and overreaching, and agreed to return the improper documents to the producing bank after the proceedings were filed.

13.    The NLRB then issued four new subpoenas, one to each of the Appellants here, on or about September 22, 2022.[21]

14.    Appellants filed a Motion to Revoke the Subpoenas with the Board on September 29, 2022. The Motion to Revoke was summarily denied on January 4, 2023.

15.    This proceeding was filed on or about February 28, 2023.[22]

16.    Appellants were initially served with this proceeding by electronic mail at their accounts in Texas and by United Parcel Service private party delivery to the undersigned's office in Houston, Texas. The District Court entered a Memorandum Order in response to a Motion to Expedite that had been filed by the NLRB in which

---

[21]    Appendix at Tab 4, at Exhibits 10, 11, 13, and 13 (the subpoenas at issue)
[22]    Appendix at Tab 4.

it authorized the NLRB to serve Appellants with the proceeding by Certified Mail, Return Receipt Requested, and mailed from Washington, D.C., to Texas. Appellants do not contest that service was effectuated through Certified Mail, but contests that District Court's conclusion that serving a party by Certified Mail to another state somehow confers personal jurisdiction over that party in the state in which the case is pending.[23]   The District Court wrote: "service of the Petition and Order to Show Cause is sufficient to confer jurisdiction."[24]

### III.   ARGUMENTS AND AUTHORITIES

**Issue 1:    Did the Southern District of New York have personal jurisdiction over four parties with zero contacts or involvement with the state of New York?**

**The District Court does not have personal jurisdiction over Appellants.**

### 1.    Legal framework for personal-jurisdiction analysis

17.    Determining personal jurisdiction over a foreign defendant in a federal-question case such as this requires a two-step inquiry. First, the Court looks to the law of New York to determine whether personal jurisdiction will lie.[25]  If jurisdiction lies, the Court considers whether its exercise of personal jurisdiction over a foreign defendant comports with due process protections established under the United States

---

23      Appendix, at Tab 2, at p. 4.
24      *Id.*
25      *Licci v. Lebanese Canadian Bank SAL*, 732 F.3d 161, 168 (2d Cir. 2013); *Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 242 (2d Cir.2007).

Constitution.[26]

18.     "Due process considerations require that the defendant "have certain minimum contacts [with the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."[27]  There are no such minimum contacts for any of the Appellants, and certainly none of their contacts rise to the level of continuous or systematic.

19.     A court may assert general jurisdiction over foreign corporations or individuals to hear any and all claims against them when their affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State.[28]  Specific jurisdiction, on the other hand, depends on an "affiliation between the forum and the underlying controversy," principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.[29] In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of "issues deriving from, or connected with, the very controversy that establishes jurisdiction."[30]

20.     "Once it has been decided that a defendant purposefully established

---

[26]     *Licci,* 732 F.3d at 168; *see also Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

[27]     *Licci,* 732 F.3d at 168, *quoting Int'l Shoe,* 326 U.S. at 316, 66 S.Ct. 154.

[28]     *Goodyear Dunlop Tires Operations S.A. v. Brown,* 564 U.S. 915, 131 S.Ct. 2846, 2851, 180 L.Ed.2d 796 (2011).

[29]     *Id.*

[30]     *Id.*

minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice."[31]  Relevant factors at this second step of the analysis may include: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; [and] (3) the plaintiff's interest in obtaining convenient and effective relief...."[32]

21.    Because none of the Appellants have sufficient contacts with New York to confer jurisdiction, and because, even if they had some contacts, exercising jurisdiction over them would not comport with "fair play and substantial justice," this Court should dismiss this proceeding in its entirety.

### 2.    Appellants do not have sufficient minimum contacts with the State of New York for the District Court to exercise personal jurisdiction over them.

22.    Because Appellants are residents of the State of Texas with zero or very limited interactions with the State of New York, neither the general nor specific basis for personal jurisdiction applies.

### a. There is no general personal jurisdiction over any Respondent because none have "continuous and systematic contacts" with New York.

---

[31]    *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (internal quotation marks omitted).

[32]    *Metro. Life Ins. Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 568 (2d Cir.1996).

23.     General personal jurisdiction attaches when a non-resident defendant's contacts with a forum are "continuous and systematic."[33]   Such level of contacts would render a non-resident defendant essentially at home in the forum.[34] Establishing general personal jurisdiction is difficult, and requires extensive contacts between a defendant and a forum.   Even repeated contacts with forum residents by a foreign defendant will not constitute the requisite substantial, continuous, and systematic contacts required for a finding of general personal jurisdiction.[35]

24.     A court in New York may exercise general jurisdiction over an out-of-state defendant if the defendant "engaged in 'continuous, permanent, and substantial activity in New York.'"[36]   In *Daimler*, however, the U.S. Supreme Court set a "high bar" for finding that the exercise of general jurisdiction over an out-of-state corporation comports with due process.[37]   An out-of-state corporation is subject to general jurisdiction in a state "only where its contacts are so 'continuous and systematic,' judged against the corporation's national and global activities, that it is

---

[33]     *See, e.g.*, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16 (1984).

[34]     *See, e.g.*, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

[35]     *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000) (quoting *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990)).

[36]     *Id.*

[37]     *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014); s*ee also, George Moundreas & Co SA v. Jinhai Intelligent Mfg. Co Ltd,* No. 20 Civ. 2626 (VEC), 2021 WL 168930, at *1 n.1 (S.D.N.Y. Jan. 18, 2021).

'essentially at home' in that state."[38]  In the wake of *Daimler*, other than in "exceptional cases," a corporation is "at home" only in its state of incorporation and in the state of its principal place of business.[39]  Because a company operating in many states or countries "can scarcely be deemed at home in all of them . . . when a corporation is neither incorporated nor maintains its principal place of business in a state, mere contacts, no matter how systematic and continuous, are extraordinarily unlikely to add up to an exceptional case."[40]

25.  Courts in New York do not have general personal jurisdiction over any of the Appellants. They have no general relationship or interactions with the State of New York:

- None of them have ever been residents of New York, and none have ever had any physical presence in the state.
- None of them have ever been registered to conduct business in New York.
- They do not maintain, and have never maintained, a registered agent for service in New York.
- They do not maintain, and have never maintained, a place of business, office, mailing address, or telephone number in the State of New York.
- They do not have, and have never had, any employees, representatives, or agents who live or work in the State of New York.

---

[38]    *Gucci Am., Inc. v. Weixing Li,* 768 F.3d 122, 135 (2d Cir. 2013) (quoting *Daimler*, 571 U.S. at 139).

[39]    *Id.* at 135.

[40]    *Brown v. Lockheed Martin Corp.,* 814 F.3d 619, 629 (2d Cir. 2016).

23

- None of them engage in business in the State of New York. USC has never engaged in business in New York. Schmidt has never engaged in business in New York in his individual capacity. CIE has not engaged in any business in the state since mid-2019. PST has had affiliates, including NYPS and NYCGT, which conducted business in New York, but that was not direct conduct by PST, and PST's last affiliate ceased conducting business in New York April of 2020.

- Appellants do not own, and have never owned, property or assets in the State of New York.

- They do not maintain, and have never maintained, a bank account in the State of New York.

- None of them advertise or solicit business in the state, and PST, USC, and Schmidt have never personally advertised or solicited business, in the State of New York.

- None of them has undertaken any purposeful activity in the State of New York in relation to the collections investigation or the subpoenas at issue.

- None of them have committed a tort, in whole or in part, within the State of New York.

- None of them has committed an act in the State of New York in connection with the facts giving rise to this lawsuit.[41]

26. Accordingly, there are no "continuous and systematic" contacts with the State of Texas that would give rise to conclusions that any Respondent "purposefully availed itself of the benefits or protections of New York law," or that any of them could reasonably expect to be hailed into Court in New York, or that notions of "fair play and substantial justice" allow jurisdiction to be exercised over

---

[41] Exhibit A, Declaration of Schmidt, at ¶3.

them.  New York does not have general jurisdiction over any Respondent.  This case should have been dismissed.

**b. There is no specific personal jurisdiction over Appellants because they did not purposefully direct activities at the State of New York.**

27.     Specific personal jurisdiction applies when a non-resident defendant has "purposefully directed his activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.[42] Specific personal jurisdiction is confined to the adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.[43]

28.     Because Appellants currently have no contacts with New York,[44] specific jurisdiction does not exist.

29.     Respondent CIE sold tour tickets on its websites for a handful of tours that took place in New York City from 2015 to April of 2020.[45]  The tours were operated by other parties and the sales were sporadic, not continuous.[46]  Nothing about those tours gave rise to the subpoenas at issue here, and none of them are alleged to have had anything to do with Mr. Pflantzer or any NLRB claim.  Thus,

---

[42]     *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

[43]     *See Goodyear*, 564 U.S. at 919.

[44]     Appendix at Tab 6, Exhibit A, Declaration of Schmidt, at ¶4.

[45]     *Id.* at ¶5.

[46]     *Id.*

they cannot be the basis of specific jurisdiction here.

30.     Respondent PST is a non-operating holding company incorporated in Delaware and with its principal place of business in Texas.[47]  It has never had any employees or carried out any operations.[48]  It was one of the two shareholders of NYPS from 2006 to 2015.[49]  It was also one of the shareholders of NYCGT, which operated bus tours in New York from 2015 to approximately January of 2020.[50] None of those activities count as a "contact" for jurisditional purposes because the operations in New York City were conducted by NYPS and later NYCGT, not PST. The ownership of shares of a business in New York did not give rise to the subpoenas for information about PST.  Therefore, there is no specific jurisdiction over PST.

31.     The Supreme Court has held the unilateral activity of a third party cannot serve as a basis for specific personal jurisdiction because it does not satisfy the "purposeful availment" requirement.[51] The fact that other companies engaged in activity in New York in hiring and/or terminating Fred Pflantzer in 2011-2012 cannot be imputed to Appellants here.

**Issue 2:**     **Is it unfair and unreasonable for the Southern District of New York to exercise jurisdiction over these parties in this matter?**

---

[47]     *Id.* at ¶6.

[48]     *Id.*

[49]     *Id.*

[50]     *Id.*

[51]     *Burger King,* 471 U.S. at 475.

**3.     Even if Appellants did have sufficient minimum contacts with the State of New York—which they do not—it would be unfair and unreasonable for the District Court to exercise personal jurisdiction over them.**

32.     The burden only shifts to a defendant to demonstrate the exercise of personal jurisdiction would be unfair and unreasonable after a plaintiff has carried its burden to make a *prima facie* case of minimum contacts with the forum.[52] In weighing the reasonableness of exercising personal jurisdiction over a defendant, a district court should consider the following factors:

• The burden on the defendant
• The interests of the forum state in adjudicating the dispute
• The plaintiff's interest in obtaining convenient and effective relief
• The efficient resolution of controversies between states
• The shared interests of the states in furthering fundamental, substantive social policies.[53]

33.     All of those factors weigh in favor of a finding that this Court's exercise of personal jurisdiction over Appellants would offend traditional notions of fair play and substantial justice.  First, Appellants do not reside in New York, or close to New York.[54]  Litigating this matter more than 1,500 miles from where they reside would impose a burden on them and their ability to mount an effective defense against the overbroad subpoenas issued by the NLRB.[55] This factor weighs against the exercise

---

[52]     *See, e.g.*, *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 384 (5th Cir. 2003).

[53]     *See Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 113 (1987).

[54]     *See* Appendix, at Tab 6, Exhibit A, *passim.*

[55]     *Id.* at ¶7.

27

of jurisdiction.

34.    Second, New York has little, if any, interest in adjudicating the dispute between these parties because nothing about the subpoenas touches New York. They were issued in DC, are returnable in DC, and the Appellants are all Texas residents.  The time and financial burdens of having to litigate in New York would ciphon resources that would otherwise be available to aid Appellants in their defense.[56]  This factor weighs against the exercise of jurisdiction.

35.    Third, having this proceeding in New York City does not advance the NLRB's interest in obtaining convenient and effective relief. Filing suit in Texas, where all Appellants reside, would just as easily afford the NLRB convenient and effective relief.  Even if this Court were to enter an order enforcing the subpoenas, potentially a Texas Court would have to become involved to impose or enforce sanctions on Appellants for any noncompliance because they are not found in the State of New York.  This factor weighs against the exercise of jurisdiction.

36.    Fourth, this lawsuit in New York does not promote the efficient resolution of controversies between states. Again, it would have been more efficient to resolve this controversy if it had been filed in Texas, where Appellants reside. Or even in District of Columbia, where the subpoenas were issued and the enforcement

---

[56]    *Id.*

division of the NLRB is located.[57]  This factor weighs against the exercise of jurisdiction.

37.     Fifth, no fundamental, substantive social policies will be promoted by allowing one nonresident to sue another nonresident in New York courts. Even if the subpoenas should be enforced—which they should not—other forums exist where Appellants are subject to personal jurisdiction (namely, Texas).  The NLRB simply filed this suit in a jurisdiction in which Appellants are not subject to jurisdiction. This factor weighs against the exercise of jurisdiction.

38.     Because none of those factors weigh in favor of the Court exercising personal jurisdiction over Appellants, this Court should reverse the Judgment below even if it finds that Appellants had "minimum contacts" with New York.

**Issue 3:     Can service of a party by certified mail sent to another state confer personal jurisdiction on that party?**

39.     The NLRB contended and the District Court stated that jurisdiction was conferred when service was affected on Respondents.[58]  The District Court wrote: "service of the Petition and Order to Show Cause is sufficient to confer jurisdiction."[59]  Appellants vehemently disagree.  Unless a party is served in the state in which the proceeding is pending, service does not confer jurisdiction.  There is no

---

[57]     However, none of Respondents are subject to personal jurisdiction in the District of Columbia.

[58]     Appendix, at Tab 2, at p. 4.

[59]     *Id.*

29

binding authority that says otherwise.

40.     There is zero evidence to support that Appellants were ever served with summons under Rule 4, anyway.  First of all, no summons was issued.  Secondly, there is no evidence that Appellants received any certified mailing of anything.  The NLRB's reliance on Rule 4 creating jurisdiction fails for those two reasons.

41.     Regardless, Appellants contest whether a New York Court can Constitutionally exercise personal jurisdiction over them.  While it is true that if one of the Respondents had been personally served with process within this District, the act of service would have conferred jurisdiction on the District Court.  However, that did not happen.  A certified mail, sent from Washington, D.C., to Texas, cannot confer personal jurisdiction on the New York Court.

42.     If Appellants were otherwise subject to jurisdiction in New York, then serving them in Texas would confer jurisdiction, but not when they are not New York residents and when they have no contacts with New York.  "Serving a defendant, as plaintiffs did in this case, can establish personal jurisdiction *if the defendant is subject to personal jurisdiction* in the state in which the federal court sits. Fed.R.Civ.P. 4(k)(1)."[60]  Obtaining "service of process outside the forum state under a national service of process statute confers personal jurisdiction over a

---

[60]     *Shi v. Don Le*, 21 CV 1361 (ARR) (CLP), at *8 (E.D.N.Y. Mar. 2, 2022)(emphasis added)

defendant *only if that defendant has the requisite minimum contacts with the forum state*."[61]  The NLRB has not served process, but rather sent a copy of their Petition and a Show Cause Order, but even if they had, doing so would not confer jurisdiction here, where there is zero evidence of any significant contacts with the forum state.

**Issue 4:    Did the District Court err by not dismissing the case for lack of proper venue?**

**In the alternative, the case should have been dismissed or transferred to Judge Hughes' Court in the Southern District of Texas pursuant to Rule 12(b)(3).**

43.    In the alternative to dismissing the case for the lack of personal jurisdiction, this District Court should have dismissed the case for improper venue or transferred venue of this case to the Southern District of Texas.  The standard of review of a Motion to Dismiss is *de novo.*[62]

44.    Venue in federal courts is governed by 28 U.S.C. §1391, to wit:

(b) VENUE IN GENERAL - A civil action may be brought in-

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

---

[61]    *Warfield v. KR Entertainment* (*In re Federal Fountain, Inc*.), 143 F.3d 1138, 1139 (8th Cir. 1998)(emphasis added); *In re Bailey Associates, Inc.*, 224 B.R. 734, 737 (Bankr. E.D. Mo. 1998).

[62]    "[W]e will apply the same [*de novo*] standard of review in Rule 12(b)(3) dismissals for improper venue as we do in Rule 12(b)(2) dismissals for lack of personal jurisdiction[.]" *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005)" *Alaska Dep't of Revenue v. Manku*, 20-1759-cv, at *8 (2d Cir. July 19, 2021)

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

45.     None of those provisions authorized venue in the state of New York, where not only no Respondent resided, but even the Petitioner is not a New York resident.

46.     The District Court interpreted the venue issue with relation to the *case*. However, venue must be examined in relation to a *party*.   The NLRB and District Court are correct that the underlying unfair practice action took place in New York, so the *case* has a connection to New York.   Assuming that the NLRB brought an enforcement action or similar case related to that proceeding against a party with a presence in New York, then venue might be proper as to that respondent, but here, the Appellants cannot be sued in New York under 28 U.S.C. §1391(b) because they are not residents of New York, there is no relevant property (or documents) located in New York, the events giving rise to the claim occurred solely in Washington DC and Texas – the subpoenas were issued in the former and served in the latter.

**Transfer to Texas Was the Alternative Option**

47.     A "district court may transfer any civil action to any other district or

division where it might have been brought."[63]  Decisions to transfer lie within the discretion of the Court and are determined on a case-by-case analysis of convenience and fairness to the parties.[64]  So the standard of review for this Court is abuse of discretion as to whether the case should have been transferred.

48.     The burden of demonstrating the desirability of transfer lies with the moving party, who must show that transfer is appropriate and that the balance of convenience favors transfer.[65]  Courts undertake a two-step inquiry to decide motions to transfer venue.[66]  First, the Court determines whether the action could have been brought in the transferee district. Second, the Court considers "whether transfer would be an appropriate exercise of the Court's discretion."[67]

49.     In assessing whether transfer is an appropriate exercise of discretion, courts balance various factors including: (1) the plaintiffs choice of forum; (2) the convenience of witnesses; (3) the location of relevant documents and relative ease of access to sources of proof; (4) the convenience of parties; (5) the locus of

---

[63]     *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas,* 571 U.S. 49, 134 (2013).

[64]     *Woldanski v. TuSimple Holdings, Inc.*, 22 Civ. 9625 (AKH), at *2-3 (S.D.N.Y. Feb. 7, 2023) (*citing Boehner v. Heise,* 410 F.Supp.2d 228, 241 (S.D.N.Y. 2006)).

[65]     *Woldanski* at *2-3; *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.,* 599 F.3d 102, 114 (2d Cir 2010).

[66]     *See Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.,* 260 F.Supp.3d 401, 407 (S.D.N.Y. 2017) (citing *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.,* 928 F.Supp.2d 735, 743 (S.D.N.Y. 2013)).

[67]     *Everlast,* 928 F.Supp.2d at 743 (citation omitted).

operative facts; (6) the availability of process to compel the attendance of unwilling witnesses; (7) the relative means of the parties; (8) the forum's familiarity with the governing law; and (9) trial efficiency and the interest of justice.[68]

50.     Factor (1) should be disregarded because none of the parties are based in this forum. A plaintiff's choice of forum is accorded less deference where plaintiff does not reside in the chosen forum and the operative events did not occur there.[69]

51.     Factors (8) and (9) are neutral because both the New York and Houston Courts are familiar with governing law and are both efficient courts.

52.     Factors (2) through (7) all argue strongly in favor of transferring venue. All of the witnesses and documents related to the Appellants and the subpoenas are in Texas.[70]  Access to proof of everything from the relevance of the subpoenas to the Court's jurisdiction over the parties is in Texas, where Appellants are located.[71] The "relative means" of the parties makes it terribly burdensome on Appellants and their witnesses to travel to New York City,[72] while the Federal Government and its attorneys' have enormous means to travel.

---

[68]     *See Starr Indem. & Liab. Co. v. Brightstar Corp.,* 324 F.Supp.3d 421, 431 (S.D.N.Y. 2018).

[69]     *Iragorri v. United Tech. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001); *see also, Gardner v. New York City*, 20-CV-2333 (CM), at *2 (S.D.N.Y. July 23, 2020) (transferring a case from the Southern District of NY to the Eastern District of NY because the witnesses and records related to the issue were located in Brooklyn).

[70]     Appendix, at Tab 6, Exhibit A, *passim.*

[71]     *Id.* at ¶8.

[72]     *Id.*

53.    The parties have already appeared in the Southern District of Texas to debate the propriety of collections discovery, as mentioned *supra*.  Having related actions in the proposed transferee forum has been emphasized in hundreds of cases as a factor in granting a venue transfer.[73]  Perhaps this factor would not be determinative by itself, but given the fact that none of the factors weigh in favor of keeping venue in New York, this factor confirms that it was an abuse of discretion for the District Court to neither dismiss the case nor transfer it.

54.    Appellants recognize that an abuse of discretion standard is difficult to overcome in any context, but particularly in the case of discretionary transfer of venue.  However, Appellants proffer that the surrounding facts and issues in this case made it an abuse of discretion for the District Court to decline to transfer the case.  There is no personal jurisdiction over any of the Appellants in New York, but all of them are subject to jurisdiction in Texas.  There is a lack of subject matter jurisdiction in New York because the "inquiry" is the production of financial information from Texas to Washington, D.C., and New York state has nothing to do with anything in this proceeding.  Finally, venue is objectively improper in New York because none of the Appellants have engaged in any actions in the forum and

---

[73]    *See, e.g., National Super Spuds, Inc. v. New York Mercantile Exchange,* 425 F. Supp. 665, 667 (S.D.N.Y. 1977); *see also, Liberty Mut. Ins. Co. v. Expeditors Int'l Ocean,* 2:22-cv-00007, at *1 (W.D. Wash. Jan. 11, 2023) (quoting *Durham Productions v. Sterling Film Portfolio,* 537 F. Supp. 1241, 1243 (S.D.N.Y. 1982)).

literally none of the parties to this case can be found in New York. In light of those facts, and the fact that none of the factors enumerated in Starr even slightly support venue in New York, it was an abuse of discretion not to transfer the case.

**Issue 5:** **Did the District Court err by refusing to dismiss the case for lack of subject matter jurisdiction because the case involves subpoenas issued in and returnable in Washington, DC, and respondents who reside in Texas?**

**In the alternative, this proceeding should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).**

55. In the alternative to dismissing for the lack of personal jurisdiction, this Court should reverse the denial of the Motion to Dismiss for lack of subject matter jurisdiction.

56. The General Counsel asserted that the District Court has subject matter jurisdiction because it is within the jurisdiction of which the inquiry is being carried on. However, that's not true. A proceeding took place involving New York Party Shuttle, LLC, in this jurisdiction, and it involved questions of wrongful termination and backpay owed. However, that was a different "inquiry." The inquiry at hand is about collections and assets of various parties that exist in Texas and the persons undertaking the inquiry are in Washington, D.C., not New York.[74] The subpoenas were issued in D.C. and are returnable in D.C.[75]

---

[74]    *See* the Subpoenas, Appendix at Tab 4, Exhibits 10, 11, 12, and 13.

[75]    *Id.*

36

57.     No court has held that a subpoena issued in one jurisdiction (for compliance in that jurisdiction) to parties in a second jurisdiction can be enforced in a third jurisdiction where some other company engaged in an unfair labor practice, particularly where, as here, there is no further investigation about the unfair labor practice taking place. ALL of the current "inquiry" is taking place in Washington DC as admitted by NLRB in their Response. All of the documents subpoenaed are in Texas and none are in New York. There is no part of the inquiry for which the subpeonas are relevant that is taking place in New York – and the NLRB does not pretend otherwise.

58.     Even the *Cooper Tire* case cited by NLRB supports Respondents' position because that Court, in dismissing a subpoena enforcement proceding for lack of jurisdiction, focused its inquiry on the jurisdiction where the subject matter of the subpoenas existed.[76] In that case, the subpoenas sought security records at a plant and some videotapes, all of which were in Mississippi.[77] The DC Circuit reversed and held that the inquiry was being carried on in Mississippi.[78]

59.     The General Counsel filed this proceeding in the wrong Court. This Court should reverse the District Court and order the case be dismissed.

**Issue 6:        Did the District Court err by awarding attorneys' fees to the NLRB**

---

[76]     *N.L.R.B. v. Cooper Tire Robber Co.*, 438 F.3d 1198, 1199 (D.C. Cir. 2006).
[77]     *Id.*
[78]     *Id.* at 1204.

**jointly and severally against all Appellants?**

**An Award of Fees Was an Unreasonable Sanction**

60.     The award of attorneys' fees in this case was an abuse of discretion and operates as an unreasonable sanction against Appellants, who did nothing but contest jurisdiction over them in a foreign jurisdiction.   An award of fees is entirely appropriate if a party commits a transgression, or discovery abuse, or engages in harassing behavior.  Here, however, fees would be awarded to punish Respondents for challenging the jurisdiction of what is, to them, a foreign Court.  Nothing in Respondents' behavior justifies any kind of deterrent, sanction, or punishment. Parties should not be punished for asserting valid legal arguments, even if they are ultimately rejected.

**The NLRB Failed to Segregate Their Fees**

61.     A party seeking attorneys' fees must segregate them by matter and/or party.[79]   The Johnston case covers multiple permutations of this issue.[80]   The evidence must be specific to the party receiving the award, and to the party paying

---

[79]     *Schoolcraft v. City of N.Y.*, 10 Civ. 6005 (RWS), at *31 (S.D.N.Y. Sep. 1, 2016)("Where a Plaintiff is entitled to an award of attorney's fees under § 1988, inclusion of fees in an award as against one defendant for a claim attributable to another constitutes error."); *J.G. by Mrs. G. v. Bd. of Educ. of Rochester City Sch. Dist.*, 830 F.2d 444, 447-48 (2d Cir. 1987); *American Home A. C. v. United Space Alliance*, 378 F.3d 482, 494 (5th Cir. 2004); *Johnston v. Borders*, 36 F.4th 1254, 1282 (11th Cir. 2022); *see also Phillips v. Smalley Maintenance Services*, 711 F.2d 1524, 1530 (11th Cir. 1983) (affirming the denial of fees that applied to claims for which fees were inappropriate).

[80]     *Johnston*, 36 F.4th at *passim*.

the award.[81]  It makes clear that the Court should not have to do the work or guess as to how the work/fees were allocated among parties and claims.[82]  If the party seeking fees does not separate their evidence properly, a fee award is legally inappropriate.[83]

62.    The NLRB's fee bills were wholly inadequate to inform the District Court as to (a) which hours related to which Appellant; (b) which portion of the fees should be awarded against Mr. Schmidt, and which portion against each of the corporate Appellants; and (c) which hours relate to enforcement of these supboenas as opposed to general legal research or strategy applying to other cases. Accordingly, there is no way the District Court could determine a reasonable fee award.[84]

63.    First, because the District Court did not have personal jurisdiction over Appellants to enter any award against them, second because an award of attorneys' fees against a party for filing a Motion to Dismiss is not warranted or supported by law, and third because the NLRB failed to segregate their fees, Appellants ask that the Court reverse the attorneys' fees award against them.

## IV.  CONCLUSION

---

[81]    *Id.*, *passim.*
[82]    *Id.; see also ACLU of Georgia v. Barnes*, 168 F.3d 423, 429 (11th Cir. 1999).
[83]    *Johnston*, 36 F.4th at 1287.
[84]    *Id.*; *United Space Alliance*, 378 F.3d at 494 (5th Cir. 2004).

The underlying case should have been dismissed for lack of personal jurisdiction over Appellants or dismissed for lack of subject matter jurisdiction or venue, or, in the alternative, transferred to Judge Lynn Hughes' Court in the Southern District of Texas, where the collections discovery inquiry began. In any event, no award of attorneys' fees should have been made on these facts, and the District Court should not have enforced the subpoenas without giving Respondents an opportunity to object. Appellants ask that this Court grant it relief and reverse the District Court's denial of the Motion to Dismiss and its award of attorneys' fees against Appellants. In the alternative, if this Court believes jurisdiction and venue were proper, Appellants ask that the Court reverse the decision to enforce the subpoenas and require the District Court to give Appellants an opportunity to respond on the merits.

Date: May 10, 2024          Respectfully submitted,

**SCHMIDT LAW FIRM, PLLC**

By:\_\_\_/s/ C. Thomas Schmidt_____
C. Thomas Schmidt
State Bar No. 00797386
7880 San Felipe, Suite 210
Houston, Texas 77063
firm@schmidtfirm.com
713-568-4898 telephone
815-301-9000 facsimile

**ATTORNEYS FOR APPELLANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on May 10, 2024, a true and correct copy of the above and foregoing instrument has been served on all counsel of record by using the Court's Electronic Case Filing ACMS system to all counsel of record.

___/s/ C. Thomas Schmidt_____
C. Thomas Schmidt

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

This document complies with the word limit of Local Rule 32.1(a)(4) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f): this document contains 6,889 words and 30 pages or less.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, size 14.

__/s/ C. Thomas Schmidt_____

C. Thomas Schmidt